## Case No. 12,434.

### SCAMMON v. HOBSON.

[1 Hask. 406.] [1]

District Court, D. Maine. May, 1872.

FEDERAL COURTS—FOLLOWING STATE PRACTICE—WITNESS—BANKRUPTCY—ILLEGAL PERFORMANCE—KNOWLEDGE OF INSOLVENCY.

1. The examination of the respondent in equity as a witness by the orator does not operate as a release to him of the matters touching which he is examined.

2. Parties being competent witnesses in the courts of the state become so in the federal courts by act of congress of July, 1862 [12 Stat. 588].

3. Examinations of parties in equity do not subject the party taking them to the same consequences that formerly resulted therefrom.

4. A creditor taking security from his debtor is chargeable with the knowledge ordinary diligence of inquiry into the circumstances of the debtor would have given him.

5. Circumstances, like the maturing of the debtor's commercial paper in large amounts, the selling of large amounts of his stock before it reached him. out of the ordinary course of trade, known to a creditor about to take security, call upon him to make inquiry into the solvency of his debtor.

6. The answer under oath of a respondent in equity. false in material particulars concerning which the respondent could have made no mistake. is unreliable as to all other matters contained in it, and may be disregarded by the court.

7. A conveyance by an insolvent debtor to his creditor in fraud of the bankrupt act of certain property, a part of which is to secure a debt and

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

a part is a sale for cash, is an entirety and the assignee in bankruptcy of the debtor may recover the value of the whole.

In equity. Bill by [John I. Scammon] an assignee in bankruptcy [against Joseph Hobson] to set aside a sale of the bankrupt's property to the respondent as made in fraud of the bankrupt act [of 1867 (14 Stat. 517)]. The cause was heard on bill, answer and proofs.

[For prior proceedings in this litigation, see Case No. 10.]

Josiah H. Drummond, for orator.
Edwin B. Smith, for respondent.

FOX, District Judge. The complainant as assignee of Wm. F. Abbott, who was adjudged a bankrupt on the 14th of December, 1869, on a petition filed by his creditors October 19, 1869, has brought this bill to recover from the respondent the value of a large lot of tobacco conveyed to him by the bankrupt September 14, 1869, in fraud of the provisions of the bankrupt law. The answer admits that Abbott was insolvent at the time of this transfer, but denies that the respondent had then any reason to believe that such was Abbott's condition, or that any preference was had or designed by the sale of the tobacco.

In contradiction of the answer, the complainant read in evidence a document purporting to be an examination of the respondent taken before a magistrate by consent, "to be used in like manner and with like effect, as if taken under an order of court and before a master in chancery to be used in this cause." This examination with an affidavit of Hobson annexed thereto establishes most conclusively the untruth of the answer in most material matters. But it is claimed by the counsel of the respondent, that the complainant having elected to examine the respondent, and read the examination at the hearing, has by so doing waived his right to a decree against him on the facts to which he was examined. The rule as stated (3 Greenl. Ev. § 316) is, "that the examination of a defendant by the plaintiff as a witness, ordinarily operates as an equitable release to him so far as regards the matters to which he is interrogated." I am not aware of any case in the courts of the United States where this practice has been adopted; but admitting that such was the established rule as formerly recognized by the high court of chancery, I have no doubt that the same is now abrogated by the change in the law compelling parties to testify as witnesses. In 3 Greenl. Ev. § 316, note 5, it is stated that the rule is now abrogated and a decree may be had by virtue of the statute of 6 & 7 Vict. c. 85.

This precise question arose in Harford v. Rees, 9 Hare, Append. 70; and it was decided "that the plaintiff since the statute of 14 & 15 Vict. 99, may examine as a witness a defendant in a suit in equity, without prejudicing any of his rights to a decree in the same suit against him."

The act of congress of 1862, c. 89, declares, that "the laws of the state in which the court shall be held, shall be the rules of decision, as to the competency of witnesses in the courts of the United States in trials * * * in equity, &c." Rev. St. Me. 1871, c. 82, § 82, provides, "no person shall be excused or excluded from being a witness in any civil suit or proceeding at law or in equity by reason of his interest in the event thereof as a party," etc. Under this provision, if this cause was pending in the state courts, the complainant could have compelled the respondent to testify as a witness. He was by the laws of Maine a competent witness for the complainant, and being thus competent, he by force of the act of 1862 was alike competent in the federal courts in this state.

It is contended that the evidence of the respondent as presented should have the effect of an examination, and that the same result must follow as would if the examination had been had prior to this change in the law; that it is entitled an examination of the respondent taken by consent, and that it was not taken as a deposition and evidence in the cause. It is true, it is entitled an examination, but that is simply the language of the magistrate, and was not by any order of the court, and it is quite manifest, that owing to the absence of an officer duly authorized to take testimony to be used at the hearing, the parties consented to take the respondent's testimony before this magistrate with like effect, as if taken before a master in chancery and to be used in the cause. It could never have been the intention of the complainant by thus proceeding to waive all claim for redress against the respondent, and if the counsel for the respondent at the time understood such would be the effect, common honesty and good faith on his part required that he should advise the counsel of the complainant that he should insist on this objection, which could at once have been obviated by the testimony being taken according to the usual practice of this court.

As the law now is, examinations of parties as formerly practiced, and with the results that then followed from the examination, are no longer in force; no matter what designation may be given to the statement by the magistrate, the court is in no respect concluded by any title he may think proper to bestow upon it, but it is rather its duty to examine for itself the instrument, and ascertain what in truth it is, and how far it may be in conformity to and authorized by the law; and having so done, no doubt is now entertained by the court that this statement of the respondent can have only the same effect as if it had been formally taken as the deposition of a party in the cause, and that by producing the same as evidence, the complainant has not thereby waived his right to redress against the respondent.

This examination of the respondent with the accompanying affidavit proves that the respondent is a manufacturer of lumber at Saco, that on the 14th of September, 1869, he was under heavy liabilities incurred for Abbott's accommodation amounting to $8,900,—$3,900 of which were Hobson's promissory notes for various sums given to Abbott between the 11th and 19th of May, 1869, on four months, and which Abbott was bound to provide for at their maturity. $1,500 fell due September 15th. On the 14th Abbott sold to Hobson 13,000 lbs. of tobacco of the value of $5,619.28. Some of it was taken quietly from the cars to Hobson's barn. Abbott was a manufacturer of tobacco, and such a sale of unmanufactured stock was not in the ordinary course of his business, and was therefore prima facie fraudulent under the provisions of the bankrupt act.

From the purchase of the tobacco, Hobson agreed to pay and discharge at their maturity, these notes loaned by him to Abbott to the amount of $3,900. In what manner the balance was to be paid does not distinctly appear. Hobson says, "I think I paid Abbott some cash, but can't state how much, can by referring to my cash book." He however gives no information as to anything that appears upon the cash book, and we can only infer that if anything favorable to him was found therein we should have been advised of it.

The large amount which Abbott was accountable for to Hobson, the immediate maturity of so many of his notes which he had loaned to Abbott, and the unprecedented course of selling so large an amount of stock before it had reached the factory, in order to relieve Hobson and secure him from his liabilities, absorbing so large an amount of the stock, which it is not shown had been paid for by Abbott, and the want of which would necessarily impair the operations of the concern and destroy any credit which Abbott before that might have possessed, are all cogent circumstances calling upon Hobson to exercise ordinary diligence in respect to the title of Abbott, and by these facts he was put upon inquiry, and is chargeable with all the knowledge it is reasonable to suppose he would have acquired if he had performed his duty. Scammon v. Cole [Case No. 12,432].

From the facts clearly established, the court is convinced that Hobson was at that time well aware of Abbott's insolvent condition, and that this sale of the tobacco was designed by these parties for the purpose of securing Hobson in part from his liabilities for Abbott's accommodation.

This view of the transaction is directly in conflict with Hobson's statements in his answer, in which he says, "I paid Abbott that sum, $5,619.28 for the tobacco, and the money went to pay the then maturing liabilities of Abbott to parties in Boston, Saco, and the wages of his men. * * * The tobacco was not transferred or delivered to me as security for my own liabilities, but for cash used to meet the then accruing bills and notes of Abbott's various creditors."

This answer must be taken as true until it is shown to be false; but its falsehood is clearly established by the other statements under oath of Hobson, from which it is clearly beyond controversy, that $3,900 of this amount, instead of being paid by him in cash to Abbott, and used to meet the then accruing bills and notes of Abbott to various creditors, was retained by Hobson to pay his own notes loaned to Abbott for his accommodation, and falling due in a few days, and which by this new arrangement Hobson assumed to pay, and exonerated Abbott from his liability by surrendering to him his obligation to discharge the notes at their maturity and indemnify Hobson therefrom. The court is quite certain that no one from the perusal of the answer would ever conjecture the true state of this transaction. Instead of its being a full, frank, honest disclosure of the trade and the application of the payments realized from it, so that the court would be truly informed as to all that had taken place, and in what manner the purchase money had been appropriated, the court regrets to be compelled to observe that it finds this answer untrue and evasive, concealing and misrepresenting the whole transaction, and intended to mislead and deceive the court in relation thereto, falsely asserting that the respondent had paid the whole of the purchase money in cash, and that the tobacco was not transferred or delivered to him as security for his own liabilities, when $3,900 of it was within a week applied by Hobson in discharge of his own liabilities incurred on account of Abbott. "Falsus in uno falsus in omnibus." The answer being untrue in this material matter, about which the respondent could not be mistaken, and he not showing the disposition made by him of the balance of the purchase money, or that he had paid any of it to Abbott, as he could easily have done by his cash book if such was the fact, the court is compelled to discredit the whole answer, and can place no reliance on any part of it as evidence of the actual state of the transaction.

The court has heretofore been obliged in a pointed manner to express its reprobation of the loose and reckless manner in which parties have seen proper to present to the court answers to bills in equity. Thus far, I apprehend, they have gained but little advantage by such practice, and I trust that henceforth the court may not have occasion to thus comment on the answer of a respondent, as it is a most unpleasant duty, but one which the court does not feel at liberty to disregard.

The transfer being shown to have been in fraud of the bankrupt act by a fraudulent preference to the amount of $3,900 at least, I am inclined to the opinion that the court

should not apportion or diminish the damages below the full value of the property, and hold the respondent accountable only for that sum, even if it had been shown by reliable evidence that Abbott at the time of the sale was paid by Hobson the balance of the purchase money. The transaction being impeached for fraud, and for that cause declared void and invalid, the entire transaction is annulled and without any force, virtue or effect as against the assignee in bankruptcy, and he is entitled to recover the full value of the property thus fraudulently conveyed to respondent.

Decree for complainant for $5,619.28 and interest from February 15, 1870.

[Upon rehearing, there was also a decree for complainant. Case No. 12,431.]